## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Robert A. Ries,                                      Civ. No. 10-1715 (JNE/JJK)

        Plaintiff,

v.

                                     **REPORT AND**
Winona County,                                       **RECOMMENDATION**

        Defendant.

Robert A. Ries, 23844 Westwood Road, Trempealeau, WI 54661, *pro se*.

Mary A. Rice, Esq., Fafinski Mark & Johnson, PA, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant's Rule 12(b)(6), and in the Alternative, 12(c) Motion to Dismiss Plaintiff's Complaint (Doc. No. 6), and on Defendant's Rule 39 Motion for Jury Trial (Doc. No. 16). The motion has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant's motion to dismiss be granted in part and denied in part and that Defendant's motion for a jury trial be granted.

## BACKGROUND

On April 21, 2010, Plaintiff commenced this action by filing a Complaint asserting that Defendant Winona County discriminated against him because of his age and sex (and apparently because he is a veteran). The factual

allegations in the Complaint are not lengthy and the Court sets them forth below

in full:

> Cheri McLennan, an employee of Winona County incorrectly scored
> my application for employment as a License Clerk, thus denying me
> an opportunity to interview, and be hired, for the position.  Maureen
> Holte, the Personnel Director of Winona County did not correct these
> errors, and notified me that I was not granted an interview.  The
> Winona County Personnel Department is composed entirely of
> females and the License Department is composed of females.
> Ms. McLennan and Ms. Holte are females.  The candidates
> interviewed were all women and the person hired was a woman who
> had been occupying the position on a temporary basis.  I believe all
> of these woman [sic] were considerably younger than me.  I beleive
> [sic] discovery will show that winona county [sic] has hired only
> women, much younger than myself, for these positions and the
> women interviewed for this position were much less qualified than I
> am.  I am also a veteran, and I believe none of these women were
> Veterans.
>
> Thus, I believe Winona County illegally discriminated against me.
> For legal precedence I cite Green vs. McDonnell Douglas, where the
> U.S. Supreme Court ruled that statistics alone are insufficient to
> establish discrimination in hiring.

(Doc. No. 1, Compl. ¶ 7.)

Plaintiff applied for a license-clerk position.  (Compl. ¶ 7.)  Defendant

rejected Plaintiff's application on October 28, 2008.  (Doc. No. 9, Aff. of Mary A.

Rice in Supp. of Def.'s Mot. to Dismiss Pl.'s Compl. ("Rice Aff.") ¶ 2, Attach. 1,

Ex. A at 1.)  In his Charge of Discrimination against Defendant, Plaintiff explained

that he was well qualified for the job and that he believed Defendant passed him

over for the position due to his sex and age.  (*Id.*)  According to the charge,

Defendant also rejected Plaintiff's application and did not interview him because

his application did not score high enough.  (*Id.*)  Plaintiff claims that he discovered that there were errors in scoring the application in May 2009.  (*Id.*)

On May 17, 2010, Defendant filed an Answer to Plaintiff's Complaint denying Plaintiff's allegations of discrimination and asserting that Plaintiff failed to state a claim upon which relief can be granted.  (Doc. No. 4.)  That same day, Defendant filed a motion to dismiss.  (Doc. No. 6.)  Defendant has also filed a motion requesting a jury trial pursuant to Federal Rule of Civil Procedure 39. (Doc. No. 16.)

## DISCUSSION

### I.    Defendant's Motion to Dismiss

#### A.    The Parties' Positions

Defendant moves to dismiss Plaintiff's claims for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), or alternatively, for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  Defendant argues that Plaintiff's claims of age and sex discrimination are time-barred because Plaintiff failed to file an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of Defendant's decision not to hire him.  Defendant also argues that, even accepting all the allegations in Plaintiff's Complaint as true, Plaintiff has pleaded insufficient factual matter to state a claim for relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, or the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et*

*seq.*

Plaintiff responds that he filed a letter of complaint with the EEOC in a timely fashion, the EEOC accepted his charge as timely filed, and the EEOC did not provide him with a receipt for his timely filed charge.  Further, Plaintiff argues that he did not learn the full extent of Defendant's basis for rejecting his application until after a meeting in May 15, 2009, and therefore he appears to argue that the period in which he was required to file a charge with the EEOC was tolled.  And finally, Plaintiff asserts that Defendant improperly scored his application by giving him no credit for certain categories in which he had significant experience, and by giving him no credit in other categories that were not even requirements of the position for which he applied.  Plaintiff argues that because of these errors, he was denied the opportunity for an interview.

### B.    Standard of Review

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."  A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").

4

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 545. A complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 562 (discussing the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).  Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

When considering a motion to dismiss under Rule 12(b)(6), a court may consider material attached to the complaint and materials that are public records, do not contradict the complaint, or are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).  Here, this Court concludes that it may consider Plaintiff's charge filed with the EEOC (Rice Aff. ¶ 2, Attach. 1, Ex. A), his intake questionnaire (Doc. No. 15, June 19, 2010 letter to Court from Ries, Attach. 1), and certain other matters discussed in this Report and Recommendation, as matters embraced by the pleadings, and need not thereby convert this motion into one for summary judgment under Rule 12(b).

*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  However, even a *pro se* complaint must allege facts, and not just bare, unsupported, legal conclusions. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (explaining that "[a]lthough it is to be liberally construed, a *pro se* complaint must contain specific facts supporting its conclusions"); *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (stating that "[a]t the very least . . . the complaint must contain facts which state a claim as a matter of law and

6

must not be conclusory") (emphasis added).

### C.   Legal Analysis

#### 1.   Timeliness of the charge

Exhaustion of administrative remedies is a prerequisite for filing actions in federal court alleging claims under Title VII and the ADEA. *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) (ADEA); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994) (Title VII). An individual asserting a claim of sex discrimination under Title VII, "'who has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice,' generally must file a charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 825-26 (8th Cir. 2009) (quoting 42 U.S.C. § 2000e-5(e)(1)). "Similarly, under the ADEA, an aggrieved employee generally must file a charge within 300 days, if the alleged unlawful employment practice occurred 'in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice.'" *Id.* at 826 (quoting 29 U.S.C. § 633(b), and citing 29 U.S.C. § 626(d)(1)(B)). Plaintiff does not dispute that Title VII and the ADEA require him to file a charge with the EEOC within the 300-day limitations period.

In the context of a Title VII case, the statute of limitations begins to run when the allegedly unlawful act is communicated to the plaintiff. *See Delaware State College v. Ricks*, 449 U.S. 250, 258-59 (1980). "In the context of an ADEA

action . . . the limitations period begins to run when the plaintiff receives notice of a[n] [adverse employment action]." *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995).  The limitations period begins to run even if the employee is not aware of the discriminatory effect or the employer's discriminatory motivation in taking the adverse-employment action.  *See id.* (citing *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88-89 (4th Cir. 1990) ("To the extent that notice enters the analysis, it is notice of the employer's actions, not the notice of a discriminatory effect or motivation that establishes the commencement of the pertinent filing period.")).

### a.    The formal charge

Plaintiff states, in a letter filed in response to Defendant's motion, that he did not receive a rejection letter from Defendant until October 30, 2008.  (Doc. No. 13 at 1.)   He signed and dated the EEOC charge September 21, 2009.  Thus, at a minimum, Plaintiff filed his formal charge asserting age and sex discrimination as a result of Defendant's refusal to hire him as a license clerk 326 days after he received notice of the allegedly discriminatory act (October 30, 2006), which is outside the 300-day limitations period.  Unless Plaintiff can show that he asked the EEOC for relief earlier than the date of the formal charge, his claims should be dismissed for failure to timely file a charge.

### b.    The Winona County Appeals Committee meeting

Plaintiff appears to argue that the appropriate date for the beginning of the limitations period under the circumstances is May 15, 2009, because he did not

learn "that he had a claim" until after a meeting among the Winona County Personnel Appeals Committee occurred on that day.  (Doc. No. 13, Pl.'s Rebuttal at 1.)  Plaintiff's Complaint contains no factual allegations relating to this meeting, however, and he may not amend his Complaint through a response to a motion to dismiss.  Further, even if he had included such allegations in his Complaint, as noted above, the only notice relevant to a timeliness analysis under Title VII or the ADEA, is notice of the employer's actions, and notice of a discriminatory effect or motivation does not toll the commencement of the limitations period. *Dring*, 58 F.3d at 1328; *Hamilton*, 928 F.2d at 88-89.  Therefore, this Court concludes that the meeting within Defendant's personnel department does not change the date for commencement of the limitations period.

### c.    The intake questionnaire

Plaintiff next contends that he filed a letter with the EEOC on August 24, 2009, which is exactly 298 days after he received notice on October 30, 2008, of the allegedly discriminatory adverse employment action, and that the EEOC "accepted [his] complaint as timely."  (Doc. No. 13 at 1.)  The record reflects that Plaintiff provided the EEOC with a copy of an EEOC intake questionnaire that is dated August 24, 2009.  (Doc. No. 15, Attach. 1 at 2-6.)  Thus, Plaintiff apparently argues that he timely filed a charge with the EEOC because he filed the intake questionnaire within the 300-day limitations period.

With respect to Plaintiff's Title VII sex-discrimination claim, the Eighth Circuit previously held that "intake questionnaires do not satisfy the statutory

requirements for a charge because they are not verified." *See Schlueter v. Anheuser-Busch, Inc.*, 132 F.3d 455, 458 (8th Cir. 1998). However, as the Honorable Catherine D. Perry, Chief Judge of the United States District Court for the Eastern District of Missouri, explains "[t]he Supreme Court's decision in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), appears to overrule" *Schlueter* and other Eighth Circuit cases on the issue whether an intake questionnaire qualifies as filing a charge in the context of Title VII claims. *Sifferman v. Bd. of Regents, Se. Mo. State Univ.*, 250 F. Supp. 2d 1139, 1143 (E.D. Mo. 2003); *cf. Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1194 (8th Cir. 2006) (declining to decide the question whether an EEOC intake questionnaire satisfied the charge requirement under Title VII and the ADEA, but noting that the EEOC urged the court to accept a verified intake questionnaire). The court in *Sifferman* noted that *Edelman* did not reach the question of what constitutes a charge of discrimination, but also analyzed whether a particular document comported with the liberally interpreted definition of a charge in the EEOC's regulations. *Sifferman*, 250 F. Supp. 2d at 1143. The *Sifferman* court noted that the EEOC's regulations require a charge to contain the complaining individual's full name, address, and telephone number, the full name and address of the person against whom the charge is made and the employer's number of employees, if that information is known, and "'[a] clear and concise statement of the facts." *See id.* (quoting 29 C.F.R. § 1601.12(a)) (alteration in original).

In the context of Plaintiff's ADEA claim, the question whether a document qualifies as a charge is one of the claimant's intent.  "The ADEA does not require that charges be verified[,]" and an intake questionnaire functions as a charge when "'the circumstances indicate that the claimant intended to activate the machinery of the ADEA by lodging the questionnaire with the agency.'" *Schlueter*, 132 F.3d at 459 (quoting *Diez v. Minn. Mining and Mfg. Co.*, 88 F.3d 672, 676 (8th Cir.1996)).

The Eighth Circuit has not addressed the issues of what constitutes a charge for purposes of Title VII and the ADEA directly since the Supreme Court's decision in *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008), wherein the Court concluded that for a document to be a charge it must contain the information required by the regulations and must be reasonably construed as a request for the EEOC to take remedial action.  *Id.* at 402.  Recently, however, applying *Holowecki*, the Tenth Circuit indicated that for an intake questionnaire or other document to constitute a charge, it must "(i) provide[] the minimum information the regulations require, and (ii) . . . 'be [capable of being] reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee.'"  *Semsroth v. City of Wichita*, 304 F. App'x 707, 712-13 (10th Cir. 2008) (quoting *Holowecki*, 552 U.S. at 402).  The Tenth Circuit further explained that it would apply the same rule in the context of the ADEA and in Title VII cases.  *Id.* at 712 n.5.  Applying these rules, the court upheld the dismissal of a

11

female officer's claim that she was discriminated against on the basis of sex because she did not timely file a charge with the EEOC.  *Id.* at 714.  The court explained that there was insufficient evidence in the record that she took "steps necessary to demonstrate a desire to start the EEOC process" where she did not engage the administrative process further after filing an intake questionnaire with the EEOC.  *See id.* at 713 (explaining that each officer filed intake questionnaires that standing alone could not be reasonably construed as requests for the agency to take remedial action); *id.* at 714 (explaining that one of these officers did not obtain a right-to-sue letter and that there was no evidence that she asked the EEOC to start its process during an interview with a senior investigator).  The court concluded that the other two female officers' intake questionnaires were sufficient to constitute charges because they followed through with the EEOC's subsequent communications and obtained right-to-sue letters, thus indicating their intent to seek the remedies available by law.  *See id.*

This Court concludes that, after *Edelman*, intake questionnaires are not foreclosed from being considered a charge in Title VII cases.  Nor are they *per se* insufficient under the ADEA.  And, following *Holowecki*, and considering the Tenth Circuit's persuasive discussion in *Semsroth*, this Court turns to the issue whether Plaintiff's submissions to the EEOC provided the minimum information the regulations require and can be reasonably construed as a request for the EEOC to take remedial action to protect his rights.  Here, Plaintiff's intake questionnaire contains all of the information required by the regulations.  *See* 29

C.F.R. § 1601.12(a)(1)-(5).  It also clearly indicates that his claim relates to discrimination on the basis of age and sex in connection with Defendant's rejection of his application.  Near the bottom of the questionnaire, Plaintiff indicated that he wanted to file a charge of discrimination and authorized the EEOC to look into the discriminatory acts about which he complained.  Then, after Plaintiff completed the intake questionnaire, he filed a formal charge of discrimination with the EEOC, and the EEOC sent Plaintiff a letter on October 5, 2009, indicating that it had assigned an investigator to review Plaintiff's discrimination claims.  On March 9, 2010, the EEOC issued Plaintiff a right-to-sue letter.  (Compl. at 6.)  In this Court's view, like the two female officers who engaged the administrative process in *Semsroth* and obtained right-to-sue letters, 304 F. App'x at 714, Plaintiff sufficiently requested that the EEOC take remedial action to protect his rights, and the intake questionnaire satisfies the charge requirement.  Thus, this Court concludes that the formal charge that Plaintiff filed on September 21, 2009, relates back to the August 24, 2009 intake questionnaire, which was dated 298 days after he received notice of the adverse employment action complained of in this action.

Defendant argues that even if Plaintiff's August 24, 2009 intake questionnaire is treated as a charge, the questionnaire was still untimely because, although it is dated August 24, 2009, Plaintiff did not file it with the EEOC until sometime later.  Defendant has provided information obtained pursuant to a Freedom of Information Act request relating to the date Plaintiff

submitted his intake questionnaire to the EEOC.  (Doc. No. 32, Second Suppl. Aff. of Mary A. Rice in Supp. of Def.'s Mot. to Dismiss PL.'s Compl. ("Second Suppl. Rice Aff.") ¶ 3, Attach. 1, Ex. A.)  According to Defendant, the readout from a FAX machine indicates that the EEOC did not receive the intake questionnaire until August 25, 2009.  (*See id.* ¶ 2; *id.* ¶ 3, Ex. A at 1 (top of page reading "Aug. 25, 2009 1:25 PM").)  However, counsel for Defendant could not confirm that, in fact, the date at the top of the form conclusively establishes that the EEOC received the questionnaire on August 25, 2009.  Moreover, Defendant's argument that August 25, 2009, was 301 days after the limitations period began to run incorrectly presumes that the period began to run on October 28, 2008, when Defendant *wrote* the letter informing Plaintiff that he would not be interviewed.  The period did not begin to run on the date the letter was written, but on the date Plaintiff *received notice* of the adverse employment action. *Dring*, 58 F.3d at 1328 ("[T]he limitations period begins to run when the plaintiff receives notice of a[n] [adverse employment action].").  Thus, even if Defendant had shown that the EEOC did not receive the intake questionnaire by facsimile until August 25, 2009, this would still fall on the 299th day of the limitations period, which began to run on October 30, 2008, when Plaintiff received Defendant's letter informing him that he would not be hired.

The EEOC's documentation also clearly indicates that Plaintiff sent a letter to the EEOC on August 22, 2009, beginning with the line "I hereby file a sexual and age discrimination charge against Winona County, Winona, MN."  (*Id.* ¶ 4,

Attach. 2, Ex. B.)  The letter contains most of the information required by the regulations; Plaintiff omitted the employer's full address and, perhaps, a "statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a state or local agency."  29 C.F.R. § 1601.12(a)(4)-(5).  However, the letter does include "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  *See id.* § 1601.12(b).

Ultimately, this Court concludes that Defendant has failed to conclusively show that Plaintiff's intake questionnaire, which this Court considers to be sufficient to constitute a charge, was untimely.  Even if Defendant were correct that the limitations period began to run on October 28, 2008, and had shown that the EEOC did not receive Plaintiff's intake questionnaire until August 25, 2009, one day after the expiration of the 300-day filing deadline, this Court concludes that Plaintiff's August 22, 2009 letter contains sufficient information to be reasonably construed as a request for the EEOC to take remedial action to protect his rights.  Thus, Plaintiff's formal charge would relate back to August 22, 2009, which is unquestionably within the 300-day limitations period.  This Court, therefore, recommends that Defendant's motion to dismiss for failure to timely file a charge with the EEOC be denied.

2.    **Sufficiency of Plaintiff's veteran status, sex, and age discrimination Allegations**

Having concluded that Plaintiff's Complaint need not be dismissed on the ground that he filed an untimely charge with the EEOC, this Court now considers Defendant's argument that Plaintiff failed to adequately plead factual allegations to state a claim for which relief can be granted.

a.    **Veteran-status claim**

To the extent Plaintiff claims he was discriminated against on the basis of his status as a veteran of the Armed Forces, his Complaint should be dismissed. Neither the ADEA nor Title VII protects discrimination against individuals on the basis of their veteran status.  *See* 42 U.S.C. § 2000e; 29 U.S.C. § 623(a). Because neither Title VII nor the ADEA treats veterans as a protected class, any claim Plaintiff attempts to assert under those statutes should be dismissed.

The Uniformed Services Employment and Reemployment Rights Act ("USERRA") was enacted in part "to prohibit discrimination against persons because of their service in the uniformed services."  38 U.S.C. § 4301(a)(3). USERRA specifically provides that: "A person who . . . has performed . . . service in a uniformed service shall not be denied initial employment . . . or any benefit of employment by an employer on the basis of that . . . performance of service[.]" 38 U.S.C. § 4311(a).  A violation of the statute occurs when a person's military service is a "motivating factor" in the adverse employment action even if it is not the sole factor.  38 U.S.C. § 4311(c).  "Discriminatory motivation . . . may be

16

inferred from a variety of factors, including proximity between the employee's military activity and the adverse employment action, . . . and disparate treatment of certain employees compared to other employees with similar records or offenses." *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001). Although Plaintiff's Complaint does not mention the USERRA, Plaintiff does allege that he is a veteran, that he was denied initial employment, and that he believes that none of the other applicants, who were less qualified for the position, were veterans.  We must accept these allegations as true.

However, to the extent Plaintiff's Complaint can be construed to allege a USERRA claim, it would be implausible to infer that his veteran status was a motivating factor in Defendant's decision not to hire him.  Plaintiff submitted several exhibits (Doc. No. 39), among which is the October 28, 2008 letter informing him that he would not be interviewed, and a Findings of Fact, Report and Recommendations of the Winona County Personnel Board of Appeals where Plaintiff challenged that decision.  These documents are embraced by the pleadings, and can be considered here without converting Defendant's motion into one for summary judgment.  *See Porous Media Corp.*, 186 F.3d at 1079. These documents clearly indicate that Plaintiff was awarded an extra ten points under the Veteran's Preference Act of the State of Minnesota ("VPA"), Minn. Stat. § 197.455, subds. 4 & 5, on his application score because he is a veteran.  In addition, they clearly show that Plaintiff should only have received an extra five points because he does not qualify as a "disabled veteran" within the meaning of

17

the VPA. *See* Minn. Stat. § 197.455, subd. 5. Thus, rather than penalizing Plaintiff for his veteran status, Defendant credited him for his service to the Nation *and* made an error in his favor. Under these circumstances, it would be unreasonable to infer that his veteran status was a motivating factor in Defendant's decision not to interview him for the position.

### b.   Title VII sex-discrimination claim

"Title VII forbids an employer to 'fail or refuse to hire . . . any individual . . . because of such individual's . . . sex . . . .'" *Darke v. Lurie Besikof Lapidus & Co., LLP*, 550 F. Supp. 2d 1032, 1040 (D. Minn. 2008) (citing 42 U.S.C. § 2000e-2(a)(1)). To state a claim for sex-discrimination under Title VII in a failure-to-hire case a plaintiff must allege facts which, if true, would show that he was discriminated against "because of his sex," such as allegations that others outside the plaintiff's protected class were treated more favorably. *See Wright v. Porters Restoration, Inc.*, Cause No. 2:09-CV-163-PRC, 2010 WL 2559877, at *4 (N.D. Ind. June 23, 2010). The "complaint alleging employment discrimination 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his] sex." *Levin v. Madigan*, __ F. Supp. 2d __, No. 07 C 4765, 2010 WL 934032, at *5 (N.D. Ill. March 10, 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)).

Although *Twombly* retired the no-set-of-facts pleading standard traditionally applied on a motion to dismiss, 550 U.S. at 563, this did not change the fact that a Title VII complaint need not allege acts sufficient to make out a

classic *McDonnel Douglas prima facie* case; rather, such a complaint need only

state a claim for discrimination.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

513 (2002) ("[A] complaint in an employment discrimination lawsuit [need] not

contain specific facts establishing a *prima facie* case of discrimination under the

framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973)."); *Boykin v. Key Corp.*, 521 F.3d 202, 212 (2d Cir. 2008) (same); *Davis v.

Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 973 (11th Cir. 2008) (same);

*Simpson v. Nickel*, 450 F.3d 303, 305 (7th Cir. 2006) (same); *Njaka v. Wright*

*County*, 560 F. Supp. 2d 746, 751 (D. Minn. 2008) (citing *Swierkiewicz* in the

context of a motion to dismiss a claim under 42 U.S.C. § 1983 claim for the

proposition that "a plaintiff need not even plead a *prima facie* case").  Thus, a

complaint need only allege that the plaintiff belongs to a protected class, was

qualified for a particular position, was subject to an adverse employment action,

and similarly situated individuals outside his protected class were treated more

favorably.  *See Gilbert v. Maricopa County*, No. CV 09-1756-PHX-MHM, 2010

WL 2712225, at *4 (D. Ariz. July 2, 2010).

        Here, for purposes of this motion only, this Court must accept the following

factual allegations as true.  Plaintiff was a qualified applicant for the posted

license-clerk position.  Plaintiff's application was incorrectly or erroneously

scored.  The individuals scoring his application were females.  He was not

selected for an interview.  All of the individuals interviewed for the position were

females.  Defendant offered the position to a female and eventually hired this

female.  And every employee in Defendant's office is a female.  It is reasonable to infer from these allegations that Plaintiff is alleging that women received favorable treatment in the application-review process for the license-clerk position he sought, and that this favorable treatment may have been connected to and resulted from intentional discrimination on the basis of sex.  *Cf. Bare v. NPC Intern., Inc.*, Civil No. 09-2092, 2009 WL 4898317, at *2 (W.D. Ark. Dec. 14, 2009) (concluding that an African American employee of a pizza store stated a claim sufficient to survive a motion to dismiss where the allegations suggested that similarly situated employees outside the protected group were treated differently and thus "create[d] an inference that her termination may have been connected to, and resulted from, intentional race discrimination"); *cf. Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316(HB), 2008 WL 3861352, at *5 (S.D.N.Y. Aug. 19, 2008) (reasoning that a female's sex-discrimination complaint should be dismissed because it did not allege that any male employees were given preferential treatment).  Taken in connection with Plaintiff's Charge of Discrimination to the EEOC, which is embraced by the pleadings here, Plaintiff's Complaint adequately explains the relevant time period, actors involved, the position he sought, the application he submitted, and the factors upon which he intends to base his sex-discrimination claim.  Taken together, all the foregoing allegations are sufficient to provide Defendant with notice of Plaintiff's sex-discrimination claim so that it may begin preparing a defense.  *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (noting that under

*Twombly* and *Iqbal* "it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts plead give the defendant fair notice of what the claim is and the grounds upon which it rests").  Accordingly, this Court concludes that Defendant's motion to dismiss Plaintiff's sex-discrimination claim should be denied.

<h3 style="text-align:center"><b>c. ADEA claim</b></h3>

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire . . . any individual . . . because of such individual's age."  29 U.S.C. § 623(a).  "In a failure-to-hire case, the prima facie case of age discrimination consists of four elements: '(1) the plaintiff was in the protected age group (over 40), (2) the plaintiff was otherwise qualified for the position, (3) the plaintiff was not hired, and (4) the employer hired a younger person to fill the position."  *Christensen v. Titan Distr., Inc.*, 481 F.3d 1085, 1095 (8th Cir. 2007) (quoting *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 856 (8th Cir. 2003)); *see also McDonald v. Overnite Exp.*, Civil No. 08-5069 (JNE/JSM), 2009 WL 3517976, at *6 (D. Minn. Oct. 26, 2009) (listing elements of an ADEA claim).

Here, we must accept as true the following factual allegations set forth in Plaintiff's Complaint.  At the time he applied for the license-clerk position, Plaintiff was 66 years old.  Defendant scored his application erroneously or incorrectly.  Defendant rejected his application and did not interview him for the position.  All the individuals interviewed for the position were younger than he was.  The

person hired for the position was younger than he was. He was more qualified for the position than the other individuals who Defendant interviewed.

Just as his allegations regarding sex discrimination adequately plead a claim under Title VII, these allegations support an inference that Defendant failed to hire Plaintiff because of his age. Because this Court accepts as true that Plaintiff was more qualified than the other applicants, older than those applicants that Defendant interviewed, received a lower score on his application despite being more qualified than the younger applicants, and that Defendant hired a person younger than him to fill the position, Plaintiff has at least pleaded sufficient facts to support an inference that he was not hired because of his age. And although his Complaint and the documents it embraces do not contain detailed factual allegations regarding the precise manner in which Defendant acted with the age-based discriminatory motive that is the hallmark of an ADEA claim, his pleading demonstrates the grounds of his entitlement to relief with sufficient clarity to allow Defendant to prepare a defense. *See Braden*, 588 F.3d at 595.

Defendant argues that Plaintiff has failed to adequately plead a disparate-treatment claim under the ADEA because he must plead that age was the but-for cause of the employer's adverse decision under *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350 (2009). Defendant does not further elucidate this argument in its memorandum, but, at the hearing, Defendant argued that Plaintiff failed this but-for test because he pleaded that he was discriminated against on

the basis of his age *and* his sex.  *Gross* involved an allegedly erroneous

instruction to the jury suggesting that it must return a verdict in the employee's

favor if he proved by a preponderance of the evidence that his age was a

motivating factor in his demotion.  *Id.* at 2347.  *Gross* was not a case involving

the sufficiency of an ADEA complaint.  The fact that in *Gross* the Court held that

a plaintiff bringing an ADEA disparate-treatment claim must prove that age was

the but-for cause of the challenged adverse employment action and that the

ADEA does not authorize a "mixed-motive[] age discrimination claim," *id.*, *Gross*

does not foreclose an ADEA plaintiff from pleading alternative theories of relief.

Accordingly, this Court concludes that Defendant's reliance on *Gross* is

misplaced.

Based on the foregoing, this Court recommends that Defendant's motion to

dismiss Plaintiff's ADEA claim be denied.

### 3.    Punitive-damages claim

Defendant also moves to dismiss Plaintiff's claim for punitive damages on

the grounds that punitive damages are not available under Title VII or the ADEA.

Title VII provides:

> A complaining party may recover punitive damages under this
> section against a respondent (*other than a government, government
> agency or political subdivision*) if the complaining party demonstrates
> that the respondent engaged in a discriminatory practice or
> discriminatory practices with malice or with reckless indifference to
> the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1) (emphasis added).  Defendant, Winona County, is a "government, government agency or political subdivision" within the meaning of 42 U.S.C. § 1981a(b)(1) against which an award of punitive damages is unavailable.  *See Clark v. City of Macon, Ga.*, 860 F. Supp. 1545, 1552 (M.D. Ga. 1994) (concluding that § 1981a(b)(1) prohibited recovery of punitive damages against a city).  While Plaintiff has filed two separate responses to Defendant's motion to dismiss the punitive-damages claim in his Complaint, he has not disputed that Defendant is a government, government agency, or political subdivision.  And this Court can see no reason to conclude that Winona County would not fall within the statute's plain language.  Therefore, this Court recommends that Defendant's motion to dismiss be granted to the extent it seeks dismissal of Plaintiff's claim for punitive damages under Title VII.

"The ADEA provides that 'liquidated damages shall be payable only in cases of willful violations of this chapter,'" and "an employer's violation of the ADEA is 'willful' if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" *Brown v. Stites Concrete, Inc.*, 994 F.2d 553, 558 (8th Cir. 1993) (quoting 29 U.S.C. § 626(b) and *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128-29 (1985)).  The ADEA does not, however, specifically provide for a punitive-damages remedy.  Although the Eighth Circuit has not directly addressed the issue whether punitive damages are available in addition to these liquidated damages, several other

courts have held that punitive damages are not available under the ADEA.  For

instance, the Ninth Circuit recently explained as follows:

> [P]unitive damages are not available under the ADEA, which
> employs its complex enforcement scheme "to help employers and
> workers find ways of meeting problems arising from the impact of
> age on employment." . . . Relief under the ADEA is limited to
> "judgments compelling employment, reinstatement, or promotion,"
> the recovery of unpaid minimum wages or overtime pay, and
> reasonable attorneys' fees and costs.

*Ahlmeyer v. Nev. Sys. of Higher Educ.*, 555 F.3d 1051, 1059 (9th Cir. 2009)

(quoting 29 U.S.C. §§ 216(b), 621, and 626(b)); *see also Espinueva v. Garrett*,

895 F.2d 1164, 1165 (7th Cir. 1990) ("Neither Title VII nor the ADEA authorizes

awards of compensatory or punitive damages, as opposed to equitable relief

such as reinstatement and back pay.") (quotations omitted); *Bruno v. W. Elec.

Co.*, 829 F.2d 957, 966 (10th Cir. 1987) (finding punitive damages not allowed in

ADEA cases); *Walker v. Pettit Constr. Co., Inc.*, 605 F.2d 128, 130 (4th Cir.

1979) ("[W]e hold that punitive damages are not recoverable under [29 U.S.C.

§ 626].");  *Murphy v. Am. Motor Sales Corp.*, 570 F.2d 1226, 1227 (5th Cir. 1978)

(per curiam) ("[W]e [have] definitively held that punitive damages are not

recoverable in a private action brought under the ADEA."); *Glass v. IDS Fin.

Servs. Inc.*, 778 F. Supp. 1029, 1076-77 (D. Minn. 1991) (Doty, J.) (rejecting an

anomalous Seventh Circuit decision, citing *Espinueva*, noting that at least five

other circuits had concluded that punitive damages are not available under the

ADEA, and concluding that the "plaintiffs may not assert punitive damages claims

predicated on their ADEA claims").  Consistent with this uniform line of authority,

this Court recommends that Defendants' motion to dismiss Plaintiff's punitive-damages claim for any ADEA violation should be granted.

## II.   Defendant's Motion for Jury Trial

Defendant has also filed a motion pursuant to Rule 39 of the Federal Rules of Civil Procedure, requesting that this Court order a jury trial on both Plaintiff's Title VII and ADEA claims.  Rule 39(b) provides that where a plaintiff has not demanded a jury trial on a particular issue, such issues are to be tried by the court, "[b]ut the court may, on motion, order a jury trial on any issue for which a jury might have been demanded."  Fed. R. Civ. P. 39(b).  Here, Defendant argues that if Plaintiff's Title VII sex-discrimination claim survives, then there is a right to trial by jury under 42 U.S.C. § 1981a(c), and if Plaintiff's ADEA claim survives, there is a right to a jury trial for compensatory damages under 29 U.S.C. § 626(c).  Plaintiff has presented no persuasive argument that this matter should be tried by the court or that Defendant should be denied these statutory rights to a jury trial.  Therefore, this Court recommends that Defendant's motion for a jury trial be granted.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.   Defendant's Rule 12(b)(6), and in the Alternative, 12(c) Motion to Dismiss Plaintiff's Complaint (Doc. No. 6), be **GRANTED IN PART** and **DENIED IN PART** as follows:

a.      Defendant's motion should be granted to the extent it seeks

dismissal of Plaintiff's claim for discrimination based on Plaintiff's status as

a veteran;

b.      Defendant's motion should be granted to the extent it seeks

dismissal of Plaintiff's claim for punitive damages under Title VII or the

ADEA;

c.      Defendant's motion should be denied in all other respects; and

2.      Defendant's Motion for Jury Trial (Doc. No. 16), be **GRANTED**.


Date: July 28, 2010

 *s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

Under D. Minn. Loc. R. 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **August 11, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.